[No. 51075-0.   En Banc.   February 27, 1986.]

ROBIN LOUISE HONTZ, ET AL, *Appellants,* v. THE
STATE OF WASHINGTON, ET AL, *Respondents.*

*Mark Jaffe,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Steve Milam, Assistant,* for respondent Harborview Medical Center.

*Norm Maleng, Prosecuting Attorney,* and *Mary Ann Condon, Deputy; Waitt, Johnson & Martens* and *Barry M. Johnson,* for respondents King County, et al.

BRACHTENBACH, J.—The plaintiffs, five individuals, challenge the constitutionality of the Uniform Alcoholism and Intoxication Treatment Act, RCW 70.96A, and urge application of 42 U.S.C. § 1983 to the alleged actions of the var-

ious defendants. Plaintiffs also seek damages, an injunction and attorney's fees.

Plaintiffs allege that in separate incidents they were involuntarily held in custody at the King County Detoxification Center pursuant to RCW 70.96A.120. Two plaintiffs were taken by King County police directly to the Detoxification Center after certain incidents. The other three plaintiffs went to Harborview Medical Center for medical treatment and then were transferred to the Detoxification Center. Plaintiffs allege that they were subjected to false imprisonment, assault, apprehension of battery, outrage, emotional distress and deprivation of their 42 U.S.C. § 1983 federal civil rights. Other allegations will be considered in the opinion.

Plaintiffs sued the State, Harborview Medical Center, King County, King County Health Department, King County Sheriff, King County Detoxification Center and its director, and 26 John and Jane Does.

All defendants,[1] except the John and Jane Does, moved for partial summary judgment on two issues: (1) the constitutionality of RCW 70.96A.120, and (2) the application of 42 U.S.C. § 1983. In its orders granting defendants' motions for partial summary judgment, the trial court held RCW 70.96A.120 to be constitutional and dismissed the 42 U.S.C. § 1983 claims against these defendants. What happened to the John and Jane Does, unidentified employees of the various entities, is not evident from the record.

The trial court entered the direction and finding required by RAP 2.2(d), thus permitting this appeal. We affirm in part and reverse in part, but emphasize that we are ruling only on the constitutionality of RCW 70.96A and the application of 42 U.S.C. § 1983. Plaintiffs' tort claims are not here.

---

[1]The State apparently was voluntarily dismissed from the suit by plaintiffs prior to the motions for partial summary judgment.

## I
### CONSTITUTIONALITY OF RCW 70.96A

■ The plaintiffs first contend that partial summary judgments against them on the issue of the constitutionality of RCW 70.96A were improper because defendants did not sustain their burden of proof as to the absence of genuine issues of material facts. That burden as to *facts* is upon the moving party. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975). The more appropriate inquiry is whether the constitutional issue was properly raised by a CR 56 motion for summary judgment. A challenge to the constitutionality of a statute may be raised by a motion for summary judgment. *See Kinnear v. Hertz Corp.,* 86 Wn.2d 407, 418, 545 P.2d 1186 (1976). *See also* Annot., *Raising Constitutionality of Legislation by Motion for Summary Judgment,* 83 A.L.R.2d 838 (1962). Obviously there is a potential difference when a statute is attacked as being unconstitutional *on its face* as compared to *as applied.* Usually there will be no material facts as to a facial challenge. Here, there is a challenge on both grounds. We rule only on the facial challenge. The summary judgment is proper as to that. 6 J. Moore, *Federal Practice* ¶ 56.17[10] (1985). We have allowed such actions without analysis on this point. *Hoppe v. State,* 78 Wn.2d 164, 469 P.2d 909 (1970); *Sator v. Department of Rev.,* 89 Wn.2d 338, 572 P.2d 1094 (1977).

As to the constitutionality of RCW 70.96A as applied, we cannot determine that issue on this record. The plaintiffs allege that they, individually, were not within the terms of the statute. The defendants presented no material to contest those allegations. A statute constitutional on its face may violate constitutional rights in its application. *See, e.g., Cox v. Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965); *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). On this record neither the trial court nor this court knows whether those allegations are

true; therefore, we cannot determine the unconstitutionality *as applied* issue and must remand thereon.

Turning to the facial constitutionality of the statute, the plaintiffs argue that the statute is vague and overly broad. Therefore, we must analyze pertinent portions of the statute. RCW 70.96A *is patterned after, but different from,* in some respects, the Uniform Alcoholism and Intoxication Treatment Act (1971). We are concerned with RCW 70.96A.120(2):

> [A] person who appears to be incapacitated by alcohol and who is in a public place or who has threatened, attempted, or inflicted physical harm on another, shall be taken into protective custody by the police or the emergency service patrol and as soon as practicable, but in no event beyond eight hours [be] brought to an approved treatment facility for treatment.

The definition of "incapacitated by alcohol" is contained in RCW 70.96A.020(7) as follows:

> [t]hat a person, as a result of the use of alcohol, has his judgment so impaired that he is incapable of realizing and making a rational decision with respect to his need for treatment and constitutes a danger to himself, to any other person, or to property; . . .

A person meeting those conditions may not be detained after he or she is no longer so incapacitated, or more than 48 hours, if still incapacitated, unless a petition is filed under RCW 70.96A.140. RCW 70.96A.120(4).

Thus, by the statute's language the elements which trigger protective custody are: (1) a person whose judgment is so impaired by alcohol that he is incapable of realizing and making a rational decision with respect to his need for treatment; *and* (2) who constitutes a danger to himself, another person, or property; *and* (3) is in a public place, *or* (4) has threatened, attempted or inflicted physical harm on another.

■ The statute is presumed constitutional; one who challenges it must demonstrate *its invalidity beyond a rea-* sonable doubt. *Bellevue v. State,* 92 Wn.2d 717, 719, 600 P.2d 1268 (1979). We find the statute to be neither overly

broad nor vague.

Due process is the linchpin of both overbreadth and vagueness. One involves substantive due process; the other—vagueness—implicates procedural due process. *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975).

On the issue of overbreadth, *i.e.,* substantive due process, does the statute fail? Is it so broadly drawn that it may prohibit constitutionally protected activity as well as unprotected behavior? *State v. Yancy,* 92 Wn.2d 153, 157, 594 P.2d 1342 (1979).

At best, plaintiffs' analysis of this issue is imprecise and without relevant authority. There is no discussion of the standard of scrutiny by which we should judge the over-breadth issue. Even by a strict standard we find sufficient societal and, therefore, governmental interest to justify this statute. Societal interest in dealing with the continuing concerns about alcohol abuse and its concomitant consequences are a matter of common and judicial knowledge. Consistent with that interest, the protective custody provisions of RCW 70.96A.120 are narrowly drawn so as to reach only certain individuals incapacitated by alcohol and in need of treatment—that is, persons whose intoxicated condition renders them dangerous to themselves or others. Under these circumstances, the State's interest is sufficiently compelling to outweigh the temporary deprivation of liberty occasioned by application of the statute.

Plaintiffs rely heavily upon *Opinion of the Justices,* 339 A.2d 510 (Me. 1975). To understand the case is to distinguish it. The court there considered the constitutionality of protective custody provisions of a proposed alcoholism treatment act which would have permitted detention of those persons who either: (1) appeared to be incapacitated by alcohol, *or* (2) were disorderly as a result of the use of alcohol, *or* (3) were likely to cause or incur harm to themselves or others because of alcohol use. *Opinion of the Justices,* at 517–18. The court found that the first category failed to distinguish between "private" intoxication and

"public" intoxication. The court also found that under the second and third categories, influence to a minor degree could trigger custody. The court correctly held the proposed statute to be overly broad. It has no application to our statute.

The issue of vagueness raises the procedural due process requirements of fair notice to citizens and clear standards to prevent arbitrary enforcement of laws. *State v. Maciolek,* 101 Wn.2d 259, 264, 676 P.2d 996 (1984). Here, the statute is rather specific and contains reasonably clear guidelines. A person must appear to be "incapacitated by alcohol". A definition is provided with two components: judgment so impaired by alcohol that a decision as to the need for treatment is incapable of being made *and* dangerousness—to himself, others, or property. In addition, the person must be in a public place *or* have threatened, attempted or inflicted physical harm on another.

The arguments in plaintiffs' brief ignore these rather specific criteria. They conclude that the statute is extremely vague and can lead to broad and unfettered discretion on the part of law enforcement officials. Suffice it to say we are unpersuaded as to either an overbreadth or vagueness defect.

## II
## 42 U.S.C. § 1983 CLAIMS

Plaintiffs asserted damage claims against a number of individual and entity defendants for deprivation of civil rights under 42 U.S.C. § 1983 as a result of being involuntarily held in custody pursuant to RCW 70.96A.120. The civil rights claims against the various individual defendants are not before us on this appeal and we express no opinion thereon.[2] We are only concerned here with the § 1983

---

[2]The trial court's dismissal of plaintiffs' civil rights claims against former *King County Sheriff, Bernard G. Winckowski,* and *Harborview director, Gene Uno,* are not challenged on appeal. As for the § 1983 claims against other individual defendants, denominated John and Jane Does in the complaint, the record does not reveal what disposition, if any, was made of these claims.

claims against Harborview Medical Center, King County, King County Health Department, King County Sheriff, and King County Detoxification Center. As to these claims, the trial court's summary judgments in favor of defendants were proper and we affirm.

A. *Harborview*

42 U.S.C. § 1983 of the Civil Rights Act of 1871 provides in relevant part:

> *Every person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Italics ours.) The trial court's dismissal of the § 1983 claims against Harborview was premised on its conclusion that Harborview is not a "person" subject to liability under 42 U.S.C. § 1983.

The trial court's conclusion is in accord with this court's decision in *Edgar v. State,* 92 Wn.2d 217, 222, 595 P.2d 534 (1979), *cert. denied,* 444 U.S. 1077 (1980), wherein we held "the State is not suable under section 1983 for acts of its agents subjecting the plaintiff to deprivation of his civil rights". *See Quern v. Jordan,* 440 U.S. 332, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979) (states are immune from § 1983 damage suits in federal court under the Eleventh Amendment). Our holding in *Edgar* necessarily embraces § 1983 suits against state agencies or instrumentalities, for such suits are, in effect, suits against the State regardless of whether it is named a party to the action. *See Rains v. State,* 100 Wn.2d 660, 664, 674 P.2d 165 (1983) (suit against members of Public Disclosure Commission is in effect suit against the State). *See also Edelman v. Jordan,* 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974). *Cf. Centralia College Educ. Ass'n v. Board of Trustees,* 82 Wn.2d 128, 129, 508 P.2d 1357 (1973).

The trial court found, based upon uncontroverted evidence, that Harborview is operated and managed by the University of Washington and all of its employees are employees of the University. *See also* RCW 36.62.290. Because the University of Washington is a state agency, Harborview, as operated and managed by the University, is an arm of the State. Its employees are state employees and claims against the University's operation at Harborview are paid from a fund held by the State Treasurer. *See* RCW 28B.20.253. It is clear that, in the context of this case, a § 1983 suit against Harborview is in legal effect a suit against the State and cannot, therefore, be maintained.

B. *King County, King County Health Department, King County Sheriff, King County Detoxification Center*

Unlike the State and its agencies, municipalities and other local governmental entities are "persons" within the meaning of 42 U.S.C. § 1983. *Monell v. Department of Social Servs.,* 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Thus, local governmental entities, such as the King County entity defendants here, may be subject to liability under § 1983 but only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or when "constitutional deprivations [are] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* at 690–91. Respondeat superior may not be the basis for liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Department of Social Servs., supra* at 694.

Plaintiffs generally allege that official policies or customs of King County and its agencies caused the deprivation of their civil rights. Because the trial court dismissed plaintiffs' § 1983 claims against King County and its agencies on summary judgment, we will engage in the same inquiry as the trial court. *Wendle v. Farrow,* 102 Wn.2d 380, 383, 686 P.2d 480 (1984). The motion for summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). In making this determination, all evidence and inferences therefrom are to be considered in favor of the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982).

The poorly developed record in this case is bereft of any evidence of a policy or custom established and maintained by King County and its agencies which resulted in the alleged constitutional deprivations. At best, the record permits an inference that plaintiffs' constitutional rights may have been violated as a result of the alleged wrongful actions of various individual King County employees in attempting to carry out the provisions of RCW 70.96A.120. However, under *Monell v. Department of Social Servs., supra,* King County or its agencies cannot be held liable on the basis of respondeat superior for the unconstitutional actions of its employees. Absent a showing that the allegedly unconstitutional actions executed county policy or custom, the County cannot be subject to § 1983 liability under *Monell.*

This does not mean, however, as defendants allege, that the County is shielded from § 1983 liability merely because it is implementing a facially constitutional state statute. *Cf. Brower v. Wells,* 103 Wn.2d 96, 690 P.2d 1144 (1984) (Yakima held liable under § 1983 for its actions pursuant to an unconstitutional state statute). If in implementing RCW 70.96A, the County has promulgated unconstitutional poli-

cies or customs which are the "moving force" behind the alleged deprivations—or in other words, if the statute is unconstitutionally applied pursuant to county policy or custom—then the County cannot escape § 1983 liability. However, no evidence of such unconstitutional policies or customs can be found anywhere in the record.

Plaintiffs' naked assertions that such policies do exist are not sufficient to avoid summary judgment. *See Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 955, 421 P.2d 674 (1966). As we recognized in *Reed v. Streib,* 65 Wn.2d 700, 707, 399 P.2d 338 (1965), "[t]he whole purpose of summary judgment procedure would be defeated if a case could be forced to trial by a mere assertion that an issue exists without any showing of evidence." Plaintiffs point to evidence in the record indicating that the King County Detoxification Center has standard procedures for handling all persons admitted to it. However, there are no allegations or suggestions that these procedures are unconstitutional or that they violated plaintiffs' constitutional rights. As the United States Supreme Court made clear in *Polk Cy. v. Dodson,* 454 U.S. 312, 325, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981), a local government is liable under § 1983 only for deprivations caused by *unconstitutional* policies or customs. *See also Monell v. Department of Social Servs., supra* (city liability under § 1983 premised on an *unconstitutional* city policy compelling women to take unpaid pregnancy leaves); *Owen v. Independence,* 445 U.S. 622, 63 L. Ed. 2d 673, 100 S. Ct. 1398, *reh'g denied,* 446 U.S. 993, 64 L. Ed. 2d 850, 100 S. Ct. 2979 (1980) (city liability premised on its *unconstitutional* conduct in connection with dismissal of chief of police).

Plaintiffs also contend that the King County Sheriff's failure to supervise and train its officers in carrying out the requirements of RCW 70.96A is a policy which contributed to the alleged violations of plaintiffs' constitutional rights. A general allegation of administrative negligence fails to state a constitutional claim cognizable under § 1983. *Rizzo v. Goode,* 423 U.S. 362, 370–77, 46 L. Ed. 2d 561, 96 S. Ct.

598 (1976). However, as plaintiffs point out, some courts have held that a local governmental entity may be subject to liability under § 1983 when the failure to supervise or lack of training is such that it amounts to gross negligence or deliberate indifference to the deprivation of plaintiffs' constitutional rights. *See, e.g., Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir. 1981); *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir. 1979). There generally must be a showing of widespread abuse or a pervasive pattern of police misconduct to give rise to liability under § 1983 for failure to supervise. *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir. 1983). In some cases, however, a single, unusually egregious incident is found to be sufficiently out of the ordinary to create an inference of inadequate training or supervision amounting to gross negligence. *See, e.g., Martini v. Russell,* 582 F. Supp. 136, 142 (C.D. Cal. 1984).

Even under this expansive reading of *Monell,* there is nothing in the record before us to support an inference of gross negligence in the training or supervision of King County police officers. The only evidence of gross negligence posited by plaintiffs is the fact that on separate occasions, two of the plaintiffs were taken into protective custody pursuant to RCW 70.96A.120 and transported to the Detoxification Center allegedly because they interfered with a police investigation and not because they "appeared to be intoxicated". This at most raises an inference that the officers failed to comply with the requirements of RCW 70.96A.120. It neither suggests a pervasive pattern of police misconduct nor is it the kind of unusually egregious incident sufficient to raise an inference of inadequate training or supervision amounting to gross negligence.

If, as plaintiffs allege, their constitutional rights were violated as a result of the wrongful actions of certain King County employees in carrying out the provisions of RCW 70.96A, their remedy under § 1983 for such deprivations must be against those individuals who committed the acts. However, where as here, there is no evidence that official policies or customs of King County or its agencies are

responsible for the alleged deprivations, the trial court properly dismissed the 42 U.S.C. § 1983 claims against these defendants.

CONCLUSION

We hold that the protective custody provisions of RCW 70.96A are facially constitutional. The trial court's partial summary judgments on this issue are affirmed. However, on this record, we cannot determine whether RCW 70.96A was unconstitutionally applied as to the plaintiffs. To the extent that the trial court's decision purports to determine this issue on summary judgment, it is reversed and remanded.

As to application of 42 U.S.C. § 1983, the trial court properly dismissed plaintiffs' § 1983 claims against Harborview and the King County entity defendants and we affirm.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied April 7, 1986.