Martha Kate HOUGHTON, an Infant Under the Age of 14 Years by her Parent and Natural Guardian, Onnolee H. HOUGHTON, and Onnolee H. Houghton, individually, Plaintiffs,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WASHINGTON, Defendant.

No. 87 CIV. 2982 (SWK).

United States District Court, S.D. New York.

Aug. 9, 1988.

---

Rosenwasser and Pivovar, P.C., by Stewart A. Rosenwasser, Walden, N.Y., for plaintiffs.

Office of the Atty. Gen., State of Wash., by Michael F. Madden, Asst. Atty. Gen., Seattle, Wash., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs brought this diversity action to recover for the personal injuries suffered by Martha Houghton when a statue located on the premises of the University of Washington allegedly fell and injured her. De-

fendants have moved pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure ("Rule") to dismiss this action for lack of personal and subject-matter jurisdiction on the grounds that the Eleventh Amendment to the United States Constitution bars a claim for damages against defendants. Defendants argue that the action is barred because the Board of Regents of the University of Washington is a state agency and because any recovery against defendants would necessarily be satisfied by state funds. Plaintiffs argue that defendants have not adequately met their burden of proof.

### Discussion

The Eleventh Amendment bars actions against a state for retrospective monetary damages. *In re Baldwin–United Corp.*, 770 F.2d 328, 340 (2d Cir.1985) (citing *Edelman v. Jordan*, 415 U.S. 651, 663—67, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974)).[1] This Amendment denies this Court jurisdiction to hear a suit for money damages when the state is the real party in interest, regardless of whether the state is named as a defendant. *Id.; see also Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (the Eleventh Amendment bars actions in federal court when "the state is the real, substantial party in interest.") The Second Circuit has noted that "the state is usually the substantial party in interest when satisfaction of a judgment in a suit for money damages would require payment from the state treasury. *Fay v. South Colonie Cent. School Dist.,* 802 F.2d 21, 27 (2d Cir.1986) (citing *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *McClary v. O'Hare,* 786 F.2d 83, 89 (2d Cir.1986)). As a general rule, "suits for monetary awards out of state funds are deemed suits against the state and are thus barred; ..." *Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985), *modified on different grounds,* 793 F.2d 457 (2d Cir.1986). In *Kashani v. Purdue University,* 813

---

1. The Eleventh Amendment states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

F.2d 843, 845 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987), the Seventh Circuit, in considering whether an action against a state university is barred by the Eleventh Amendment, weighed

> the extent of state funding, the state's oversight and control of the university's fiscal affairs, the university's ability independently to raise funds, whether the state taxes the university, and whether a judgment against the university would result in the state increasing its appropriations to the university.

813 F.2d at 845. Other courts have considered whether the institution in question has waived its immunity by statutory provisions allowing it to sue and be sued. *See, e.g., United States v. Olavarrieta,* 632 F.Supp. 895, 899 (S.D.Fla.1986), *aff'd,* 812 F.2d 640 (11th Cir.1987) (board of regents which had state statutory power to sue and be sued is not protected by the Eleventh Amendment); *cf. Selman, supra,* 494 F.Supp. 615–16 (absent express waiver of immunity, "sue and be sued" power does not abrogate strictures of Eleventh Amendment). In determining whether an instrumentality like a university is or is not a state agency amenable to suit for money damages, the most important factor to consider in this Circuit "is whether any liability against the agency must be paid from public funds in the state treasury." *Selman v. Harvard Medical School,* 494 F.Supp. 603, 615 (S.D.N.Y.) (quoting *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38 (2d Cir.1977) (whether any liability against institution must be satisfied through public funds in

state treasury is key issue), *aff'd,* 636 F.2d 1204 (2d Cir.1980)); *cf. Kashani, supra,* 813 F.2d at 845 (key issue is the extent of the entities financial autonomy from the state).

■ A large number of courts have determined that public universities operated by the state are state agencies and cannot be sued for money damages. *Kashani, supra,* 813 F.2d at 845 ("vast majority of cases considering the issue have found state universities to be forfended by the Eleventh Amendment").[2] The Seventh Circuit has observed that "given the great number of cases holding state universities to be instrumentalities of the state for Eleventh Amendment purposes, it would be an unusual state university that would not receive immunity." *Kashani, supra,* 813 F.2d at 845. Nonetheless, while decisions in other cases may be useful analytically, they cannot govern a particular decision since "[e]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances." *Kovats v. Rutgers,* 822 F.2d 1303, 1312 (3d Cir.1987) (quoting *Soni v. Board of Trustees of the Univ. of Tenn.,* 513 F.2d 347, 352 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976)). Whether a state agency is immune under the Eleventh Amendment is a question of federal law. *Savage v. Kibbie,* 426 F.Supp. 760, 765 (S.D.N.Y.1976); *Fuchilla, supra,* 682 F.Supp. at 253.

Defendant argues that the Burke Museum, the site of the accident at issue here, is immune because it is a branch of the University of Washington, which is itself argu-

---

**2.** A number of recent decisions support this conclusion. *See, e.g., Lach v. Robb,* 679 F.Supp. 508, 513 (W.D.Pa.1988) (citing Third Circuit cases holding Pennsylvania state university system); *Mazur v. Hymas,* 678 F.Supp. 1473, 1476 (D.Idaho 1988) (court found University of Idaho immune since judgment would have to be satisfied by state funds or would have to be supplemented by state funds); *Sorey v. Kellett,* 673 F.Supp. 817, 822–23 (S.D.Miss.1987) (state universities immune since College Board acts as alter ego of state and since any judgment would be satisfied by state funds); *Wilson v. Univ. of Va.,* 663 F.Supp. 1089, 1092 (W.D.Va.1987) (university found immune, citing previous

case); *BV Engineering v. Univ. of Cal., Los Angeles,* 657 F.Supp. 1246, 1247 (C.D.Cal.1987) (university found immune, citing previous cases); *Williams v. State University of New York,* 635 F.Supp. 1243, 1250 (E.D.N.Y.1986) (state university "appears" to enjoy immunity as arm of state); *but see Fuchilla v. Prockop,* 682 F.Supp. 247, 253–54 (D.N.J.1987) (state university of medicine and dentistry not immune since university could not prove that judgment would be satisfied exclusively by state funds); *Kovats v. Rutgers,* 633 F.Supp. 1469 (D.N.J.1986), *aff'd,* 822 F.2d 1303 (3d Cir.1987) (finding that Rutgers was not arm of the state).

ably immune under the Eleventh Amendment. Defendant has not submitted any affidavits, but intends to rely on court decisions and Washington statutes. Plaintiff argues that defendant has not established by proffer of fact that either the University or the Burke Museum enjoys the protection of the Eleventh Amendment. Plaintiff also argues that non-public funds would be used to satisfy a judgment since any judgment will be drawn on a revolving tort claim fund.[3] These questions of fact must be determined by this Court.

Defendant argues that in this case any judgment would be paid out of the tort claim revolving fund established by Rev. Code of Wash. ("RCW") 4.92, which is purportedly funded with state tax dollars and maintained by the state treasurer. Defendant also stresses that all University monies are denominated "public funds" and are subject to legislative appropriation. RCW 43.88.020(4), (5) (Suppl.1988). In addition, defendant urges that all University funds are maintained as part of the state general fund, RCW 43.79.072 (1983), and that warrants drawn on the University are to be paid from the general fund, RCW 43.79.074 (1983).

■ The Court finds these arguments only partially instructive.[4] As a preliminary matter, it is important to recall that a state is not liable for damages unless it has waived its sovereign immunity. *See Pennhurst, supra,* 465 U.S. at 98–9, 104 S.Ct. at 906–7. Washington has waived its immunity, under certain circumstances, for its tortious conduct. RCW 4.92.090 (1988).[5] Final judgments for tortious conduct obtained against the state itself are to be paid out of the tort claims revolving fund. RCW 4.92.040(2) (1988). Since this action is one against the board of regents of University, section 28B.10.842 of the RCW appears to apply, which states in essence that judgments obtained against them are also to be paid out of the tort claims revolving fund.[6] The tort claims revolving fund is a fund held by the treasurer to "be used solely and exclusively for the payment of claims against the state arising out of tortious conduct ..." RCW 4.92.130 (1988). Any claims paid out of the fund are to be charged against the normal operating cost of the department or agency giving rise to the liability. RCW 4.92.170 (1988). Before any actions can be brought against the state for tortious conduct, a claim must first be presented to and filed with the state's "risk management office".[7]

■ Based on the nature of the tort claims revolving fund, this Court concludes that any judgment will be satisfied out of state monies. The fund is held by the state

3. Neither party has described or explained the nature of this fund. Defendant indicated that the fund involved here would be that established by Rev.Code Wash. 4.92. This Court, in light of its own research, will discuss the fund below.

4. First, the definition of public funds in RCW 43.88.020 includes funds which may or may not be subject to legislative appropriation and funds which may be maintained outside the state treasury. In addition, while it is true that warrants drawn on the University of Washington Fund, a special fund abolished in 1955, are to be paid out of the general fund, it is unclear from what source warrants not drawn on that fund are to be paid.

5. This section states: "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person."

6. That section states in relevant part:

Whenever any action, claim, or proceeding is instituted against any regent, trustee, officer, employee, or agent of an institution of higher education or member of the governing body, officer, employee, or agent of an education board arising out of the performance or failure of performance of duties for, or employment with such institution or education board, [and a defense is authorized], ... then any obligation for payment arising from such action, claim, or proceedings shall be paid from the tort claims revolving fund, notwithstanding the nature of the claim, pursuant to the provisions of RCW 4.92.130 through 4.92.-170, ...[Provided, such person was acting in good faith].

7. The record does not indicate that plaintiff ever complied with these administrative requirements. This deficiency alone could be grounds for dismissal. *Cook v. State,* 83 Wash.2d 599, 521 P.2d 725, 728 (1974) (waiver of sovereign immunity is conditioned on compliance with administrative requirements).

treasurer, and deficiencies are repaid at least initially from state funds allocated to the agency giving rise to the liability. The state risk management office regulates claims and is required to report to the state legislature on the status of the fund. RCW 4.92.170 (1988).

This conclusion comports with the decisions of the Ninth Circuit and the Supreme Court of Washington. As a general matter, the Ninth Circuit has stated that "Washington's waiver of immunity in its own courts [by virtue of RCW 4.92] does not waive its immunity in the federal courts." *McConnell v. Critchlow*, 661 F.2d 116, 117 and n. 1 (9th Cir.1981) (citing *Skokomish Indian Tribe v. France*, 269 F.2d 555, 561 (9th Cir.1959); *see also Draper v. Coombs*, 792 F.2d 915, 918 (9th Cir. 1986) (citing same principle).[8] The Ninth Circuit has also stated that the University of Washington is a state agency and as such actions for money damages are barred by the Eleventh Amendment. *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984) (court did not have jurisdiction to consider civil rights action seeking money damages). More specifically, the *Goodisman* court stated that plaintiff in that case was "barred from seeking money damages from the state treasury through liability of University officials in their official capacities." *Id.* (citing *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1350 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983)).

Similarly, the Supreme Court of Washington has suggested, in the context of a § 1983 action, that the University of Washington enjoys Eleventh Amendment immunity. *Hontz v. State of Washington*, 105 Wash.2d 302, 714 P.2d 1176, 1180 (1986) (en banc). Without explanation, the Court stated that the University of Washington is a state agency and receives its funding

directly from the state treasury. 714 P.2d at 1180. In *Hontz*, the Washington Supreme Court held that since the trial court determined, "based on uncontroverted evidence," that Harborview Medical Center is operated and managed by the University of Washington, and since the University itself is a state agency, Harborview was to be considered an arm of the state. *Id.* The Court relied on the fact that Harborview employees are state employees and that "claims against the university's operation at Harborview are paid from a fund held by the State Treasurer." *Id.* (citing RCW 28B.20.253).

In the present case, the Burke Museum is the state museum for natural history, RCW 27.40.010 (Suppl.1987), and the board of regents of the University of Washington have "full charge and management of the state museum [of natural history]." RCW 27.40.040 (1982). Since any judgment will be paid out of the tort claims revolving fund, any judgment in this case, like in *Hontz*, will be paid out of a fund held by the state treasurer. Consequently, the Eleventh Amendment shields the University from a suit for damages in federal court.[9]

### Conclusion

For the reasons set forth above, this Court finds itself without jurisdiction in this matter by virtue of the immunity granted the states by the Eleventh Amendment. The complaint is accordingly ordered dismissed.

SO ORDERED.

---

8. The Supreme Court has held that "a state's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts", unless the state clearly evidences an intent to waive such immunity. *Pennhurst, supra,* 465 U.S. at 99–100 n. 9, 104 S.Ct. at 907 n. 9. The Ninth Circuit opinions

discussed here reach the conclusion that Washington's waiver in its own courts is not to be understood as a waiver in federal courts.

9. Of course, the Eleventh Amendment does not bar suit in state court, and plaintiff should consider pursuing such an action if still available.