**In re TEMPLE STEPHENS CO., INC., Debtor.**

**Bankruptcy No. 92–20576–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

July 6, 1993.

Jerry W. Venters, Jefferson City, MO, for Boone County Nat. Bank.

Stephen B. Sutton, Gage & Tucker, Kansas City, MO, for debtor.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The Court scheduled a hearing on fees for the attorneys for the debtor, fees for special counsel who acted on behalf of the debtor in a state court action, and fees for accountants of the debtor. That hearing was scheduled on June 9, 1993, and at the time of the hearing a new issue arose which the parties felt the Court should address. That issue was whether or not the Boone County National Bank held some interest in the unsevered timber, the proceeds from the severed timber, the growing soybeans, the severed soybeans in the bin, and the proceeds from the severed soybeans when they were sold from the bin on the open market. This is a very interesting question and the Court asked that the parties give the Court brief memoranda on what they believed the law to be.

The parties have now furnished the Court with letter memoranda of the points which they believe support their respective positions. It is the Boone County National Bank's position that it has a security position in the timber growing on the debtor's farm along with any proceeds from the sale

of harvested soybeans grown on said farm. It is the Boone County National Bank's position that said lien arises from the real estate deed of trust containing the phrase "all rents and profits". To the contrary the debtor argues that since the adoption of the Uniform Commercial Code, it is incumbent upon a secured party to have a duly executed security agreement before any security interest in growing crops, standing crops, severed crops or timber arises in the party holding a naked deed of trust, no matter what the words in the deed of trust say. Furthermore, debtor postulates that a party with a duly executed security agreement must have perfected said security interest through the filing of UCC–1s in the case of farm products or severed crops and must have filed for record as the documents relating to the real estate would have been filed for record in the case of the growing crops or standing timber, in order to defeat the trustee's position as a theoretically perfect lien creditor. This is a case of first impression with this Judge but it is not a case of first impression with the Bankruptcy Court of the Western District of Missouri.

Prior to the adoption of the Uniform Commercial Code in 1963 with its effective date in 1965 in the State of Missouri, it is clear that a naked deed of trust containing such words as "rents and profits" conveyed a security interest in growing crops. In fact such security interest in the holder of the naked deed of trust was superior to any other person who claimed an interest in said growing crops by purchase or other kind of transfer from the original owner of the land, provided said crops were not severed before the holder of the deed of trust went into possession. See *Holdsworth v. Key*, 520 S.W.2d 637 (Mo.Ct.App.) 1975. Also cases going back to 1890 as in *Hayden v. Burkemper*, 101 Mo. 644, 14 S.W. 767 (1890) and as late as 1926 as in *Farmers Bank of Hickory v. Bradley*, 315 Mo. 811, 288 S.W. 774 (Banc 1926). The strange thing about the *Holdsworth* case is that apparently nobody thought to argue the Uniform Commercial Code. Although that decision was handed down in 1975 and the Uniform Commercial Code had been in effect for some ten years, it was never mentioned by either party. No one on the court thought to mention it either, so although it is a post Uniform Commercial Code adoption case, this Court does not believe it stands for any principle other than the fact that under Missouri law prior to the Code, a security interest in crops went with the deed of trust provided there was no provision in the deed of trust eliminating such growing crops from the coverage of said document.

Be that as it may, in the case of *Matter of Kampen*, 48 B.R. 389 (Bkrtcy.1984) the Honorable Dennis J. Stewart, a Bankruptcy Judge in the Western District of Missouri, held that the trustee prevailed against both a creditor granted a post petition security interest (without prior approval of the Court) and also against the holder of the deed of trust. Judge Stewart reasoned that the deed of trust interest in the growing and unsevered crops was (figuratively) severed by the debtor's filing of the bankruptcy petition. That case is almost squarely in point with the present case. In that case Judge Stewart opined "In order to perfect a security interest in growing crops, a creditor must, in a financing statement, describe the crops with such particularity as would permit discovery of their location by reasonable inquiry. Under the circumstances of this case, the Missouri provision that one having a deed of trust in real property is ordinarily entitled to growing and unsevered crops at the time of the foreclosure sale has no application when the trustee's lien intervenes before any foreclosure sale is held".

Judge Stewart's opinion was reinforced by the 8th Circuit Court of Appeals opinion in a case styled *United States v. A.D. Newcomb*, 682 F.2d 758 (8th Cir.1982). In that case the 8th Circuit held that the Uniform Commercial Code provisions of Article 9 superseded the long established Missouri law that the growing crops went with the real estate and could be secured by a deed of trust. Instead the Court held that the District Court was correct in applying Article 9 of the Uniform Commercial Code to a soybean crop and its proceeds. There

has been no case to the contrary in this district or in the circuit that this Court can find and this Court believes that the issue is controlled by that 8th Circuit decision.

 Counsel for the Boone County National Bank raises an ingenious argument concerning the soybeans. It is his argument that while the soybeans are in the bin on debtor's farm, they are not subject to the bank's lien. However, once the soybeans are sold, counsel suggests that under the proceeds provision of rents and profits as he defines it, i.e., the money arising from the sale of said goods, would be subject to the bank's lien. The Court declines to follow this reasoning. In the first place once the soybeans have been severed they are no longer crops. They are farm products as long as they remain in the hands of the producer. There is nothing in the deed of trust nor in the law that indicates the bank's claim to farm products is even as good as the bank's claim to growing crops. Moreover there is nothing in the bank's deed of trust or in the law to indicate the bank has any claim on proceeds. The bank has not used the word "proceeds" in the deed of trust and the bank has not filed any security instrument covering any kind of personal property where it has a perfected security interest so that it may also perfect a security interest in the proceeds arising from the sale of the secured goods. In other words, what the Court believes is that you cannot have a lien on proceeds, unless you have a lien on whatever classification of goods was sold to create the proceeds.

Finally, the Court would call the attention of the parties to *Charter Bank of Butler v. Central Co–Ops*, 667 S.W.2d 463 (Mo.Ct.App.1984). Although that case turns on the course of conduct between a bank and a debtor, there is certainly a strong indication that the Missouri Courts might be willing to open Pandora's Box and differentiate between a "standing crop" as opposed to a "growing crop." Note that the Court stated: "Since the case is reversed on other grounds, the Court leaves these questions to another time and case." l.c. pg. 465.

For all of the foregoing reasons the Court holds that the Boone County National Bank does not have any security interest in the soybeans as growing crops, severed crops or in the proceeds from the sale of the soybeans at any point in time whether while still growing or after being severed and/or stored.

 Now as to the timber. Debtor's counsel takes the position that the timber growing on the premises which is not yet severed is subject to the lien of the deed of trust. It would appear that the Boone County National Bank has a stronger argument for that position. The reason for this is that it may very well be that the growing timber or standing timber is not "goods" and instead may be real estate. Mo.R.S. 400.9–105(1)(h) provides as follows: "Goods also includes standing timber which is to be cut and removed under a conveyance or contract for sale, the unborn young of animals and growing crops".

By negative reasoning, counsel for the Boone County National Bank argues that standing timber which is not cut or is not under conveyance or contract for sale cannot be goods and cannot be subject to the Uniform Commercial Code and thus goes back to the case law and would be subject to the lien of the Boone County National Bank by virtue of the naked deed of trust. The Court has not been able to find any case on all fours with this one. There is a Florida case *Konas v. Coastal Lumber Co.*, 2 UCC Rep.Serv.2d 1379, 496 So.2d 868 (Fla.App., 1986) which would tend to substantiate the bank's position but certainly is not what you would call authority for the proposition. On the other hand there is a Washington case *Ranier National Bank v. Security State Bank*, 12 UCC Rep.Serv.2d 822, 59 Wash.App. 161, 796 P.2d 443 (1990) which indicates that christmas trees are included within the definition of crops. However, obviously christmas trees are different from white oak trees which are to be cut to be used as barrel staves or railroad ties. There is one interesting sentence of dicta in the Washington case: "The contention that only annually harvested plants constitute crops is unpersuasive."

In any event there is another reason why the Boone County National Bank's position must fail. It is the burden of any party asserting a security interest in a bankruptcy case to provide sufficient evidence of its security position. Presuming for the moment that the growing oak trees or standing timber are not goods and, therefore, not subject to the Uniform Commercial Code, nevertheless the Court has heard from Mr. Stephens, principal of the debtor, that he had a contract for the sale of oak trees which measured a certain diameter (the Court frankly cannot remember what the diameter was) and, therefore, it may well be that the oak trees were to be cut and removed under a conveyance or contract for sale. At the very least it was the burden of the bank to establish that the timber was not subject to such a contract and this they failed to do. None of the foregoing is to say that the Court has decided that standing timber is or is not subject to the Uniform Commercial Code—the Court simply does not need to reach a decision on that issue and will hold any decision for a day when it is necessary to come to grips with a fact situation which has cases going in all directions, but very few that have much bearing on the precise question.

For all the foregoing reasons then the Court holds that the objections of the Boone County National Bank based on the assertion of the bank that it has a security interest in soybeans or in the standing timber, are OVERRULED. If the Boone County National Bank desires to argue its objections which were originally raised, counsel for the bank needs to notify the Court and counsel for the debtor within ten (10) days.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.